UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY HOST,

        Plaintiff,

v.

CASCADE RECEIVABLES
MANAGEMENT, LLC,

        Defendant.

_____/

## Complaint

**I.    Introduction**

1.    This is an action for damages brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq.*, and Michigan Occupational Code ("MOC"), M.C.L § 339.901 *et seq.*

**II.    Jurisdiction**

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.    Parties**

3.    Plaintiff Kimberly Host, formerly Kimberly Hamilton, is an adult, natural person residing in Kent County, Michigan. Mrs. Host is a "consumer" and "person" as the terms are

1

defined and used in the FDCPA. Mrs. Host is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA and MOC.

4. Defendant Cascade Receivables Management, LLC ("CSC") is a Delaware limited liability company, with a principal business address of 101 2nd Street, Suite 100, Petaluma, California 94952. The registered agent for CSC is Lee Brockett, 101 2nd Street, Suite 100, Petaluma, California 94952. According to the CSC internet website (www.cascadereceivables.com), "CSC meets the needs of creditors, debt buyers and other financial institutions by buying their debt or servicing it through its stable of contingency agencies" and "CSC specializes in the purchase, management and liquidation of distressed assets." CSC is a member of DBA International and ACA International. CSC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CSC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CSC is a "debt collector" as the term is defined and used in the FDCPA. CSC is a "regulated person" as the term is defined and used in MCPA. CSC is a "collection agency" and a "licensee" as the terms are defined and used in MOC.

IV. **Facts**

5. In or about 2002, Mrs. Host opened a credit account (No. 5466410006248188) with HSBC Bank USA, N.A. or an affiliated HSBC entity ("HSBC"). Mrs. Host used the account to purchase goods and/or services for personal, family and household purposes. Any resulting obligation of Mrs. Host to pay money to HSBC was a "debt" as the term is defined and used in the FDCPA. MCPA and MOC.

6. Mrs. Host became unable to pay her alleged debt to HSBC and the account went

2

into default.

7. HSBC charged off and sold the account to Capital One Bank. Alternatively, HSBC sold the account to Capital One Bank and Capital One Bank then charged off the account.

8. On or before March 13, 2007, Capital One Bank sold the charged-off account to First Financial Asset Management.

9. On or about March 13, 2007, First Financial Asset Management sold the charged-off account to Palisades Collection, L.L.C.

10. On or about November 17, 2010, Palisades claimed that the account had an alleged, delinquent, unpaid balance of $730.74.

11. On or about April 4, 2013, Palisades sold the account to defendant CSC.

12. On or after April 4, 2013, CSC placed the account for collection with an entity named Dynamic Recovery Solutions LLC ("DRS"). CSC retained an ownership interest in the account.

13. Non-party Dynamic Recovery Solutions LLC is a South Carolina limited liability company, with a principal business address of 135 Interstate Boulevard, Suite 6, Greenville, South Carolina 29615. The registered agent for DRS is National Registered Agents Inc., 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. According to the DRS internet website (www.gotodrs.com), "Dynamic Recovery Solutions is a sophisticated, full service debt collection agency." DRS is a member ACA International. DRS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. DRS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. DRS is a "debt collector" as the term is defined and used in the FDCPA. DRS is a

3

"regulated person" as the term is defined and used in MCPA. DRS is a "collection agency" and a "licensee" as the terms are defined and used in MOC.

14. On or about April 15, 2013, DRS placed a call to Mrs. Host's residential telephone and a male DRS employee left the following recorded message on Mrs. Host's voice mail: "Hi. I'm calling from Dynamic Recovery Solutions. I wanted to discuss a matter with you today. If you would, please give me a call back as soon as you can. My telephone number here is 1-866-613-5397. Again, my telephone number which is toll free is 1-866-613-5397. I look forward to hearing from you."

15. DRS placed the above-described telephone call to Mrs. Host's telephone and left the above-quoted message on Mrs. Host's voice mail, in connection with efforts by DRS to collect the alleged debt from Mrs. Host.

16. DRS placed the above-described telephone call to Mrs. Host's telephone and left the above-quoted message on Mrs. Host's voice mail, in an effort to induce Mrs. Host to place a return telephone call to DRS so that DRS could continue in its efforts to collect the alleged debt from Mrs. Host.

17. DRS placed the above-described telephone call to Mrs. Host's telephone and left the above-quoted message on Mrs. Host's voice mail, for the animating purpose of inducing Mrs. Host to pay the alleged debt.

18. The message left by DRS on Mrs. Host's voice mail constituted a "communication" as the term is defined and used in the FDCPA, MCPA and MOC.

19. DRS did not disclose in the above-quote message left by the DRS employee on Mrs. Host's voice mail that DRS was attempting to collect a debt from Mrs. Host and that any

4

information obtained would be used for that purpose.

20. DRS did not disclose in the above-quote message left by the DRS employee on Mrs. Host's voice mail that DRS was a debt collector.

21. DRS violated the FDCPA by failing to disclose in above-quoted message left by the DRS employee on Mrs. Host's voice mail that DRS was attempting to collect a debt and that any information obtained would be used for that purpose. 15 U.S.C. § 1692e(11). *See, e.g., Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643 (S.D.N.Y. 2006).

22. DRS violated the FDCPA by failing to disclose in above-quoted message left by the DRS employee on Mrs. Host's voice mail that DRS was a debt collector. 15 U.S.C. § 1692e(11). *See, e.g., Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643 (S.D.N.Y. 2006).

23. DRS has been sued multiple times in various United States District Courts for violating the FDCPA by allegedly have failed to disclose in messages left by DRS on consumer telephone voice mails and answering machine that DRS was attempting to collect a debt and that any information obtained would be used for that purpose.

24. DRS has been sued multiple times in various United States District Courts for violating the FDCPA by allegedly have failed to disclose in messages left by DRS on consumer telephone voice mails and answering machine that DRS was a debt collector.

25. The DRS employee violated DRS company policy when he left the above-

quoted message on Mrs. Host's voice mail and did not state that the caller was attempting to collect a debt and that any information obtained would be used for that purpose.

26. The DRS employee violated DRS company policy when he left the above-quoted message on Mrs. Host's voice mail and did not state that the caller was a debt collector.

27. The DRS employee did not violate DRS company policy when he left the above-quoted message on Mrs. Host's voice mail and did not state that the caller was attempting to collect a debt and that any information obtained would be used for that purpose.

28. The DRS employee did not violate DRS company policy when he left the above-quoted message on Mrs. Host's voice mail and did not state that the caller was a debt collector.

29. DRS did not reveal the purpose of its call in the above-quoted messages left by the DRS employee on Mrs. Host's voice mail.

30. DRS concealed the purpose of its call in the above-quoted message left by the DRS employee on Mrs. Host's voice mail.

31. DRS did not reveal and concealed the purpose of its call in the above-quoted message left by the DRS employee on Mrs. Host's voice mail, and thereby violated the MCPA, M.C.L. § 445.252(e).

32. DRS did not reveal and concealed the purpose of its call in the above-quoted message left by the DRS employee on Mrs. Host's voice mail, and thereby violated the MOC, M.C.L. § 339.915(e).

33. DRS made an audio recording of the telephone call in which the DRS employee left the above-quoted message on Mrs. Host's voice mail.

34. On April 15, 2013, Mrs. Host's husband, Harold Host, placed a telephone call to

866-613-5397 and spoke with a male DRS employee. Mr. Host stated that he was responding to a message left on his telephone voice mail. The DRS employee stated that DRS was attempting to collect a debt owed by Kimberly Host on an HSBC credit card. The DRS employee stated that Mrs. Host could owe as much as $10,000.00. Mr. Host stated that the account had been the subject of prior litigation and that Mrs. Host owed nothing. The DRS employee asked Mr. Host for the name and telephone of Mrs. Host's attorney. Mr. Host provided the information.

35. On April 16, 2013, Mr. Host reviewed Mrs. Host's records and determined that Mrs. Host had two old HSBC accounts, one of which had been settled in prior litigation and one of which was not involved in the prior litigation.

36. On April 16, 2013, Mr. Host spoke by telephone with a DRS employee. Mr. Host asked the DRS employee for the entire account number for the debt that had been placed with DRS for collection. The DRS employee stated that the debt was related to HSBC Account No. 5466410006248188. The DRS employee stated that DRS was collecting the debt for HSBC and that Mrs. Host owed $1,097.11. Mr. Host stated that would investigate the matter and then contact DRS again.

37. The statement by the DRS employee that DRS was collecting the debt for HSBC was false.

38. On April 16, 2013, Mr. Host spoke by telephone with an HSBC employee regarding Account No. 5466410006248188 and was told that HSBC had sold the account to Capital One Bank.

39. On April 16, 2013, Mr. Host spoke by telephone with a Capital One Bank employee regarding Account No. 5466410006248188 and was told that Capital One Bank had

sold the account to First Financial Asset Management.

40. On April 17, 2013, Mr. Host spoke by telephone with a First Financial Asset Management employee regarding Account No. 5466410006248188 and was told that First Financial Asset Management had sold the account to Palisades Collection, L.L.C.

41. On April 17, 2013, Mr. Host spoke by telephone with a Palisades Collection, L.L.C. employee regarding Account No. 5466410006248188 and was told that Palisades Collection, L.L.C. had sold the account to Cascade Receivables Management, LLC.

42. On April 17, 2013, Mr. Host spoke by telephone with a Cascade Receivables Management, LLC employee regarding Account No. 5466410006248188. The CSC employee stated that CSC had purchased the account on April 4, 2013 from Palisades Collection, L.L.C. The CSC employee stated that CSC was the current owner of the account. The CSC employee stated that CSC had placed the account with DRS for collection.

43. On April 18, 2013, Mrs. Host spoke by telephone with a male DRS employee regarding Account No. 5466410006248188. The DRS employee stated that Mrs. Host owed $1,097.11 in connection with the account and that the account had been placed with DRS for collection. Mrs. Host stated that she was confused regarding the ownership of the account and alleged debt. Mrs. Host stated that she had received nothing in writing from DRS. The DRS employee replied: "Our client ICS, they view it as, this isn't the validation department. It's the collections department, so they don't really send out letters anymore. By most people, we're considered the very end of the line." Mrs. Host stated that she disputed owing the debt.

44. The FDCPA states in pertinent part:

**§ 1692g. Validation of debts [Section 809 of Pub. Law]**

8

**(a) Notice of debt; contents.**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

>   (1) the amount of the debt;
>
>   (2) the name of the creditor to whom the debt is owed;
>
>   (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
>   (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
>   (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

45.     DRS failed and refused to send Mrs. Host a timely and complete notice of her rights as required by the FDCPA, 15 U.S.C. § 1692g(a).

46.     DRS failed and refused to send Mrs. Host a timely and complete notice of her rights as required by the MOC, M.C.L § 339.918.

47.     DRS and its employee represented and implied to Mrs. Host that DRS would not send to Mrs. Host a notice of her rights as required by the FDCPA, 15 U.S.C. § 1692g(a).

48.     DRS and its employee represented and implied to Ms. Host that DRS would not send to Mrs. Host a notice of her rights as required by the MOC, M.C.L § 339.918.

49.     DRS and its employee falsely represented and falsely implied to Mrs. Host that

9

DRS was not required to send to Mrs. Host a notice of her rights as required by the FDCPA, 15 U.S.C. § 1692g(a).

50. DRS and its employee falsely represented and falsely implied to Mrs. Host that DRS was not required to send to Mrs. Host a notice of her rights as required by the MOC, M.C.L § 339.918.

51. It is unlawful for a debt collector to make a false representation of the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

52. It is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

53. It is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt. 15 U.S.C. § 1692e(6)(A).

54. It is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA. 15 U.S.C. § 1692e(6)(B).

55. It is unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8).

56. It is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

57. It is unlawful for a debt collector to falsely represent or imply that an account has been turned over to an innocent purchaser for value. 15 U.S.C. § 1692e(12).

58. It is unlawful for a debt collector to use any business, company, or organization name in connection with the collection of any debt, other than the true name of the debt collector's business, company, or organization. 15 U.S.C. § 1692e(14).

59. It is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

60. DRS has violated the FDCPA, 15 U.S.C. §§ 1692e(2)(A), (5), (6)(A), (6)(B), (8), (10), (12) and (14), and 1692f.

61. DRS and its employee falsely represented and falsely implied to Mrs. Host that the account and related debt currently was owned by HSBC.

62. DRS and its employee falsely represented and falsely implied to Mrs. Host that DRS was attempting to collect the alleged debt for HSBC.

63. DRS and its employee falsely represented and falsely implied to Mrs. Host that the account and related debt currently was owned by "ICS."

64. DRS and its employee falsely represented and falsely implied to Mrs. Host that DRS was attempting to collect the alleged debt for "ICS."

65. The false representations and false implications by DRS and its employees regarding the identity of the current owner of the account violated the FDCPA and Michigan law. *See, e.g., Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323 (6th Cir. 2012) (suing before ownership documents transferred); *Cox v. Hilco Receivables, L.L.C.*, 726 F.Supp.2d 659, 666 (N.D. Tex. 2010) ("Improperly identifying oneself as the owner of a debt is certainly a misrepresentation of that debt's legal status"); *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012) (misidentification of BAC as creditor); *Shoup v. McCurdy & Candler, LLC*, 465

11

Fed. Appx. 882, 885 (11th Cir. 2012) (misidentification of MERS as creditor); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472-73 (7th Cir. 2000) (allegation in its state court complaint that it was "subrogated" to Ayerco's rights gave a false impression as to the legal status); *Grant-Hall v. Cavalry Portfolio Services*, LLC, 856 F.Supp.2d 929, 942 (N.D. Ill. 2012) (misrepresenting that CPS had the right to file suit); *Manlapaz v. Unifund CCR Partners*, 2009 WL 3015166 *5 (N.D. Ill. 2009) (suing on a debt it did not own); *Matmanivong v. Unifund CCR Partners*, 2009 WL 1181529 *5 (N.D. Ill. 2009) (same); *Hepsen v. J.C. Christensen and Associates, Inc.*, 2009 WL 3064865 *5 (M.D. Fla. 2009) (false representation of creditor's name); *Braatz v. Leading Edge Recovery Solutions*, LLC, 2011 WL 9528479 *1 (N.D. Ill. 2011) (identifying two companies might cause consumer to be concerned about the possibility she was being defrauded or that she might pay the incorrect creditor and continue to have outstanding debt).

66. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

67. DRS, to increase its business and profits, has knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

68. The acts and omissions of DRS and its employees done in connection with efforts to collect the alleged debt from Mrs. Host were done intentionally and wilfully.

69. DRS and its employees intentionally and wilfully violated the FDCPA, MCPA and MOC.

70. An entity that itself meets the definition of "debt collector" under the FDCPA is vicariously liable for the unlawful debt collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3rd Cir. 2000).

71. CSC, as a debt collector, is vicariously liable for the violations of the FDCPA committed on its behalf by DRS, also a debt collector.

72. CSC attempted directly to collect the alleged debt from Mrs. Host.

73. CSC attempted indirectly to collect the alleged debt from Mrs. Host.

74. As an actual and proximate result of the acts and omissions of CSC, DRS, and the DRS employees, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which she should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1– Fair Debt Collection Practices Act

75. Plaintiff incorporates the foregoing paragraphs by reference.

76. Defendant's agent has violated the FDCPA. Defendant's agent's violations of the FDCPA include, but are not necessarily limited to, the following:

    a) Defendant's agent violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

    b) Defendant's agent violated 15 U.S.C. § 1692e by using false, deceptive and

misleading representations and means in connection with the collection or attempted collection of a debt;

c) Defendant's agent violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d) Defendant's agent violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

## Count 2 – Michigan Collection Practices Act

77. Plaintiff incorporates the foregoing paragraphs by reference.

78. Defendant's agent violated the MCPA. Specifically:

a) Defendant's agent violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive manner;

b) Defendant's agent violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c) Defendant's agent violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d) Defendant's agent violated M.C.L. § 445.252(f) by misrepresenting in a

communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, and (ii) the legal rights of a creditor or debtor;

e) Defendant's agent violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f) Defendant's agent violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Statutory damages, trebled, pursuant to M.C.L. § 445.257;

b) Actual damages pursuant to M.C.L. § 445.257; and

c) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257.

### Count 3 – Michigan Occupational Code

79. Plaintiff incorporates the foregoing paragraphs by reference.

80. Defendant's violated the MOC. Specifically:

a) Defendant's agent violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive manner;

b) Defendant's agent violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c) Defendant's agent violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d) Defendant's agent violated M.C.L. § 339.915(f) by misrepresenting in a

    communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, and (ii) the legal rights of a creditor or debtor;

e)  Defendant's agent violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

f)  Defendant's agent violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

g)  Defendant's agent violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)  Actual damages pursuant to M.C.L. § 339.916;

b)  Treble the actual damages pursuant to M.C.L. § 339.916;

c)  Statutory damages pursuant to M.C.L. § 339.916; and

d)  Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916.

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: April 19, 2013

                */s/ Phillip C. Rogers*
                Phillip C. Rogers (P34356)
                Attorney for Plaintiff
                40 Pearl Street, N.W., Suite 336
                Grand Rapids, Michigan 49503-3026
                (616) 776-1176
                ConsumerLawyer@aol.com